IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


JIMMY DISMUKE                                                    PLAINTIFF


VS.                          CASE NO. 05-CV-1003
                             CASE NO. 05-CV-1004


CHUCK CONNOR, Acting Secretary,
United States Department of Agriculture                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment.  (Doc. 49).  Defendant

argues that it is entitled to summary judgment on all of Dismuke's claims.  Plaintiff has

responded.  (Docs. 61, 63).  The Court finds the matter ripe for consideration.

## BACKGROUND

Plaintiff Jimmy Dismuke purchased a 185-acre hog farm located in Ouachita County,

Arkansas, in November 1994.  Dismuke used farm loan funds provided by the United States

Department of Agriculture ("USDA") to purchase the farm.  In June 1993, USDA's Farmers

Home Administration[1] ("FmHA") requested a "Highly Erodible Land" determination from

USDA's Natural Resources Conservation Service ("NRCS").  NRCS performed the

determination and declared 46.8 acres of Dismuke's farm as highly erodible fields.  The NRCS

did not make a wetland determination at that time.

---

[1]Farmers Home Administration is the USDA agency responsible for administering and
maintaining farm loan programs.

*A.  The Wetland Determination*

In August 1997, Dismuke submitted a request for NRCS to perform a wetland determination on the farm so that he could clear some acres for development.  In March 1998, NRCS conducted a wetland determination on Dismuke's property and delineated a total of 36.8 acres as wetland.  The determination was based on the presence of hydric soils, wetland vegetation, and wetland hydrology on the designated areas.  NRCS provided Dismuke with a copy of the wetland determination in June 1998.  However, the report did not inform Dismuke of his rights to appeal NRCS's wetland determination.  Dismuke disagreed with the wetland determination.

In April 2000, Ray Linder, Assistant State Conservationist, spoke with Dismuke about the wetland determination.  At that time, Linder discovered that Dismuke had never been informed of his right to appeal the wetland determination.  On April 18, 2000, Linder, Dave Philyaw and Randy Childress visited Dismuke's farm to speak with him about the determination and to mark the wetland boundaries.  Linder explained to Dismuke that a letter explaining Dismuke's appeal rights regarding the determination would be sent to him.  On April 28, 2000, Philyaw sent Dismuke a certified letter explaining his appeal rights.  Dismuke failed to pick up the letter, and Dismuke never filed an appeal of NRCS's 1998 wetland determination.  However, in April 2000, Dismuke did file an administrative discrimination complaint with USDA's Office of Civil Rights ("OCR") regarding alleged discrimination in NRCS's wetland determination.

On July 25, 2000, OCR sent Dismuke a letter informing him that his letter outlining his complaint did "not contain sufficient information to constitute a complete complaint."  OCR

-2-

subsequently sent Dismuke a letter in September 2000, which informed Dismuke that OCR was closing his case because Dismuke had failed to respond to OCR's July letter.

Following a telephone conversation with Dismuke, OCR later determined that the case had been closed in error and reopened Dismuke's case under a new case number. OCR also requested that Dismuke provide additional information "with sufficient detail to enable [the] staff to clearly understand the circumstances of [the] complaint." In late January 2002, Dismuke sent a letter providing additional information in support of his discrimination complaint. In March 2002, OCR informed Dismuke that it was accepting the following issues for investigation:

> 1) NRCS officials delayed rendering Mr. Dismuke's wetland delineation service, 2) the wetland determination service rendered by NRCS in 1998 was discriminatory and 3) NRCS did not notify Mr. Dismuke of his appeal rights in 1998 after wetland delineation wad conducted. [Dismuke] also alleged that [he] became aware of the above information in January and April of 2000, respectively and these incidents resulted in harassment. The bases of [Dismuke's] complaint are race (African American) and reprisal for participating in civil rights activity.

OCR also informed Dismuke that it did not have jurisdiction to investigate his allegations regarding delay in the processing of his civil rights complaints and that Dismuke would need to file such complaints with the Office of Inspector General.

On July 24, 2002, while his administrative discrimination complaint was still pending, Dismuke filed a civil action in the United States District Court for the District of Columbia alleging discrimination on the basis of race and reprisal in NRCS's wetland determination and the processing of his administrative discrimination complaint. The Office of Inspector General has never issued a final agency decision on Dismuke's administrative complaint.

*B.  Dismuke's Farm Loans*

On January 17, 2001, on behalf of his corporation, Rainbow Hog Farm, Inc., Plaintiff applied for a Farm Ownership and Farm Operating Loan with USDA's Farm Service Agency ("FSA").  Kathleen Mazzanti, an FSA farm loan manager, assisted Dismuke with the application process.  During this process, Mazzanti inquired as to $50,000 in proceeds Dismuke received from the *Pigford* class action settlement in 1999.  According to Mazzanti, she asked Dismuke about the proceeds solely for the purpose of listing all assets/liabilities on Dismuke's financial statements.  Dismuke informed Mazzanti that the proceeds were used to pay off debts and expenses.

On February 16, 2001, Dismuke was certified eligible for direct loan assistance.  An appraisal of Dismuke's farm was ordered.  On March 8, 2001, FSA approved Dismuke's application for the farm loans subject to the appraisal.  On April 9, 2001, Mazzanti was informed that the contract appraiser had declined to perform the real estate appraisal, and a second appraiser was contracted.  On April 23, 2001, the appraisal was completed and submitted to FSA.  On May 4, 2001, Mazzanti met with Dismuke to review his farm operating plan, and Dismuke increased his Operating Loan request to $50,000.  Mazzanti informed Dismuke that she was waiting on title work and expected it to be completed the following week.

Dismuke filed an administrative discrimination complaint with OCR regarding his 2001 farm loans application.  Dismuke alleged that FSA delayed in processing his application and complained about Mazzanti's inquiry into his class action settlement proceeds.  On May 8, 2001, Mazzanti informed Dismuke that the title work was complete.  Both farm loans closed on May 15, 2001.

Dismuke did not include sufficient information from which OCR could determine the basis and issues of his complaint regarding the farm loans, so there was a delay in OCR's decision to ultimately accept the complaint for investigation.  In March 2002, OCR accepted the following issues for investigation"

> [W]hether Farm Service Agency officials:  1) failed to properly process [Dismuke's] January 2001 loan application, 2) failed to provide [Dismuke] with technical assistance when processing [his] loan application and 3) continued to reference or question how [Dismuke] spent [his] award from the Pigford Class Action lawsuit during [Dismuke's] succeeding loan applications.  The basis of [the] complaint is reprisal for participating in civil rights.

Dismuke applied for a new Operating Loan on March 16, 2002.  FSA found Dismuke eligible for assistance on June 4, 2002, and the loan was approved on June 5, 2002.  The loan was completed and closed on June 17, 2002.  Dismuke received a new Operating Loan in the amount of $115,000, and his previous two farm loans were rescheduled.  Dismuke has not made a payment on either his 2001 farm loans or his 2002 farm loan.

On September 30, 2002, Dismuke filed a civil action[2] in the United States District Court for the District of Columbia alleging discrimination on the basis of reprisal in FSA's farm loan programs and the processing of his administrative discrimination complaint.  OCR never issued a final agency decision on Dismuke's administrative complaint.

Dismuke's two pending cases in the United States District Court for the District of Columbia were transferred to this Court in January 2005.  Dismuke's two cases have since been consolidated into a single case.  Following the Court's dismissal of a number of Dismuke's claims, the only claims remaining are one claim brought under the Equal Credit Opportunity Act

---

[2]Dismuke filed the September 2003 action in addition to the July 2002 action he filed in the same court.

("ECOA") and four claims brought under Chapter 7 of the Administrative Procedures Act ("APA"). The claims are as follows: (1) Dismuke's ECOA claim based on USDA's alleged discrimination in its farm loan program; (2) Dismuke's APA claim based on USDA's alleged discrimination in its farm loan program; (3) Dismuke's APA claim based on USDA's alleged discrimination in the processing of his administrative civil rights complaint related to its farm loan program; (4) Dismuke's APA claim based on USDA's alleged discrimination in its wetland determination; and (5) Dismuke's APA claim based on USDA's alleged discrimination in the processing of his administrative civil rights complaint related to its wetland determination. The Defendant has filed a summary judgment motion, arguing that all of Dismuke's claims should be dismissed.

## SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006). The moving party bears the burden of showing that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

## <u>DISCUSSION</u>

First, the Court will address Dismuke's ECOA claim.  Then, the Court will discuss each of Dismuke's APA claims.

### A.  The ECOA Claim

Defendant argues that it is entitled to summary judgment on Dismuke's ECOA claim because he had neither offered direct evidence of discrimination nor stated a prima facie case of disparate treatment discrimination.  ECOA makes it "unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction  ... on the basis of race, color, religion, national origin, sex or marital status, or age ... or ... because the applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a)(1) & (3).  A private right of action exists for violations of ECOA's anti-discrimination provisions.  15 U.S.C. § 1691e. Here, Dismuke complains that FSA discriminated against him or retaliated against him by (1) questioning him about funds he received as a claimant in the *Pigford* case, (2) delaying the loan process, and (3) failing to provide technical assistance during the application process.

A credit applicant may prove unlawful discrimination under ECOA using one or more of three theories:  (1) direct evidence; (2) disparate treatment analysis; and (3) disparate impact analysis.  *Faulkner v. Glickman*, 172 F. Supp. 2d 732, 737 (D. Md. 2001); *A.B. & S. Auto Serv. v. Shore Bank of Chicago*, 962 F. Supp. 1056, 1060 (N.D. Ill. 1997).  Because the purposes of ECOA and Title VII are similar, the courts look to Title VII employment discrimination law

when construing ECOA. *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876–77 (6th Cir. 2002); *Rosa v. Park West Bank & Trust*, 214 F.3d 213, 215 (1st Cir. 2000).

To prove discrimination in violation of ECOA with direct evidence, the plaintiff must offer direct evidence that the decision to deny credit was based on an impermissible factor. *A.B. & S. Auto Serv.*, 962 F. Supp at 1060, n. 5.  "Direct evidence of discrimination may be established though explicit and unambiguous statements of hostility towards persons protected by ECOA, which prove discrimination without interference or presumption." *Id.* (quoting Charles E. Thomas, *Defending a Free Standing Equal Credit Opportunity Act Claim*, 114 Banking Law Journal 108, 109 (1997)).  The Eight Circuit, in the employment discrimination context, has held that the direct evidence required is evidence of conduct or statements by persons involved in making the employment decision that directly manifests a discriminatory attitude.  *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 (8th Cir. 2001).  The statement or conduct must be of a sufficient quantum and gravity that would allow the finder of fact to conclude that attitude  more likely than not was a motivating factor in the employment decision." *Id*.  However, such statements must be distinguished from "stray remarks" and "statements by decisionmakers unrelated to the decisional process." *Clearwater v. Indep. School Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000).

Here, Dismuke offers as direct evidence of discrimination the fact that he was asked during the loan application process about funds he received as a *Pigford* claimant.  However, the loan manager stated that she asked Dismuke about the funds to help identify Dismuke's assets for the loan application.  Dismuke stated that he no longer had those funds, the loan manger continued processing the application, and Dismuke ultimately received the loan.  The inquiry by

the loan manager was not an explicit statement of hostility toward Dismuke nor did it directly

manifest a discriminatory attitude.  Dismuke cannot show that this inquiry more likely than not

was a motivating factor for an alleged delay in the process of his loans and an alleged lack of

technical assistance.

Absent direct evidence of discrimination, a plaintiff may also rely on circumstantial

evidence using a disparate treatment analysis to establish unlawful discrimination under ECOA.

*See Golden v. City of Columbus*, 404 F.3d 950, 963 (6th Cir. 2005).   To establish a prima facie

claim under ECOA, a plaintiff must demonstrate the following:  (1) he was a member of a

protected class; (2) he applied for and was qualified for a loan with a bank; (3) the loan was

rejected despite his qualifications; and (4) the bank continued to approve loans for applicants

with similar qualifications.  *Rowe v. Union Planters of Southeast Missouri*, 289 F.3d 533, 535

(8th Cir. 2002).

Here, Dismuke actually received the loans, so the analysis above does not quite fit the

particular facts of this case.  The statute, however, bars racial discrimination with respect to any

aspect of a credit transaction.  15 U.S.C. § 1691(a)(1).  Thus, although the Eighth Circuit is silent

on this issue, other courts have held that a proven delay in the loan approval process could

constitute a form of discrimination covered by ECOA.  *JAT, Inc. v. Nat'l City Bank of the

Midwest*, 460 F. Supp,. 2d 812, 820 (E.D. Mich. 2006).  In such cases, a plaintiff would still need

to offer evidence that loan applicants outside of his protected class were treated more favorably.

*See Visconti v. Veneman*, No. 06-1315, 2006 WL 3069214, at *3 (3rd Cir. Oct. 30, 2006).  Here,

Dismuke has produced no evidence that similarly situated applicants outside of his protected

class were treated more favorably regarding the technical assistance provided to him or the time

it took to process and approve his application.  Accordingly, Dismuke fails to make out a prima facie claim under ECOA based on a disparate treatment analysis.

Even if Dismuke had stated a prima facie case of discrimination, Defendant has offered a legitimate nondiscriminatory reason for its actions, which Dismuke has failed to rebut with evidence of pretext.  When a plaintiff satisfies his burden of establishing a prima facie case of discrimination, the defendant must articulate a legitimate nondiscriminatory reason for its adverse action.  *Cherry v. Ritenour School Dist.*, 361, F.3d 474, 478 (8th Cir. 2004).  If the defendant articulates such a reason, the "presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by proving that the explanation is pretextual." *Id*.  Here, the adverse actions are an alleged delay in the loan process and an alleged lack of technical assistance.  The loan manager, Kathleen Mazzanti, assisted Dismuke with his application and helped him develop a Farm and Home Plan based on his proposed operation. Dismuke has offered no proof that the technical assistance he received was lacking in any way.

Regarding the alleged delay in the approval process, Mazzanti attributed any delay to a number of legitimate, nondiscriminatory factors.  For instance, Mazzanti was required to obtain additional information from Dismuke to complete the loan application.  In the meantime, Dismuke requested an increase in the loan amount, which resulted in necessary revisions to the Farm and Home Plan.  Additionally, once the application was completed, Defendant had to secure an outside agency to complete title work and obtain an appraisal before the loan could close.  Dismuke has offered no evidence that any of these legitimate, nondiscriminatory reasons for the alleged delay were pretextual.  Thus, even if Dismuke had established a prima facie case of discrimination (which he has not), Dismuke's ECOA claim would still fail as a matter of law.

-10-

    *B.  The APA Claims*

        Next, Defendant argues that it is entitled to summary judgment on each of Dismuke's

APA claims.  The APA waives the government's immunity from certain suits challenging

administrative agency action and seeking relief other than money damages.  5 U.S.C. § 702.  The

APA provides no substantive requirements, but merely provides the framework for judicial

review of agency action.  *Preferred Risk Mut. Ins. Co. v. U.S.*, 86 F.3d 789, 792 (8th Cir. 1996)

("There is no right to sue for a violation of the APA in the absence of a relevant statute whose

violation forms the basis for complaint.")  "The APA generally provides a framework for judicial

review of final agency action when an adequate remedy is otherwise lacking."  *Defenders of*

*Wildlife v. Administrator, E.P.A.*, 882 F.2d 1294, 1303 (8th Cir. 1989).

            1.  Dismuke's APA claims based on USDA's loan processing

        Dismuke's APA claims based on alleged credit discrimination must fail as a matter of

law, because Dismuke has an adequate remedy under ECOA.  Section 704 of the APA provides

for judicial review of final agency actions, but it limits the review to claims for which there is no

other adequate remedy in a court.  5. U.C. § 704; *Defenders of Wildlife*, 882 F.2d at 1303.  Here,

Dismuke has an adequate judicial remedy under ECOA for Defendant's alleged discriminatory

acts in processing his farm loan application.  ECOA makes it "unlawful for a creditor to

discriminate against any applicant with respect to any aspect of a credit transaction  ... on the

basis of race, color, religion, national origin, sex or marital status, or age ... or ... because the

applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a)(1) & (3).

A private right of action exists for violations of ECOA's anti-discrimination provisions.  15

U.S.C. § 1691e.  Thus, because ECOA provides an adequate judicial remedy for Dismuke, the

-11-

Court has no jurisdiction to consider Dismuke's APA claims regarding discrimination in the processing of his farm loan application.

> 2.  Dismuke's APA claims based on a failure to investigate his civil rights complaints

Turning now to Dismuke's APA claims based on the USDA's failure to investigate his civil rights complaints, these claims must also fail as a matter of law.  Judicial review under the APA does not extend to Dismuke's allegations regarding USDA's failure to investigate his discrimination complaints, because there are no final agency decisions to review and because there is no statute that provides judicial review of the USDA's civil rights complaints.

Dismuke initiated two administrative complaints[3] with OCR alleging a failure to investigate his civil rights complaints; however, neither OCR nor the Office of Inspector General[4] ever issued a final decision regarding these complaints before Dismuke filed his complaints in federal court.  In fact, the investigation of Dismuke's complaints had not even been completed when Dismuke initiated his lawsuits.

Two conditions must be satisfied for an agency action to be final:

> First, the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature.  And second, the

---

[3]Dismuke filed one complaint alleging that the USDA discriminated against him in the processing of his administrative civil rights complaint related to the farm loan program.  He filed another complaint alleging that the USDA discriminated against him in the processing of his administrative civil rights complaint related to the wetland determination.

[4]OCR informed Dismuke by letter on March 11, 2002, that it had accepted three issues for investigation but that it could not exercise jurisdiction over the alleged delay in the processing of Dismuke's civil rights complaints.  OCR further informed Dismuke that he should address any complaints regarding the processing of his civil rights complaints to the USDA/Office of Inspector General.  The record does not reflect that Dismuke ever notified the Office of Inspector General of these complaints.

action must be one by which rights or obligations have been determined, or from which
legal consequences will flow.

*Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 813 (8th Cir. 2006).  Here, because

neither OCR nor the Office of Inspector General has made a final decision regarding an alleged

failure to investigate Dismuke's discrimination complaints, there can be no judicial review under

the APA.

Moreover, the APA provides for judicial review of an agency action that has been "made

reviewable by statute."  5 U.S.C. § 704.  There is no statute that provides for judicial review of

OCR's processing of civil rights complaints.  Thus,  Dismuke's APA claims based on a failure to

investigate his civil rights complaints fail as a matter of law.

### 3.  Dismuke's APA claims based on NRCS's wetland determination

According to the APA, one may obtain judicial review of a final agency action without

pursuing an administrative appeal only if that appeal process is not required by statute or by

regulation.  *See* 7 U.S.C. § 704.  Here, 7 U.S.C. § 6912(e) requires a USDA program participant

to "exhaust all administrative appeal procedures" before he or she can sue the Secretary of the

Department of Agriculture.  Thus, Dismuke was required to appeal NRCS's wetland

determination to USDA's National Appeals Division before seeking judicial review of the

agency's decisions.  *See*  7 C.F.R. § 11.2(b) (stating that program participants shall seek review

of an adverse decision before a Hearing Officer of the National Appeals Decision prior to

seeking judicial review).  Dismuke filed an administrative civil rights complaints regarding

NRCS's wetland determination; however, Dismuke did not file an appeal regarding the

determination.  Moreover, Dismuke has not alleged that he comes within one of the narrow

exceptions to administrative exhaustion.[5]  Because Dismuke failed to exhaust his administrative

remedies regarding the wetland determination, judicial review under the APA is precluded.

### 4.  All of Dismuke's APA claims

Even if judicial review of Dismuke's various APA claims was not precluded, his claims

would still fail as a matter of law, because he has not offered any evidence that the challenged

agency decisions were arbitrary, capricious, an abuse of discretion, or otherwise unlawful.  A

court is only "permitted to set aside agency action that is 'arbitrary, capricious, and an abuse of

discretion, or otherwise not in accordance with law.'"  *Voyageurs Nat'l Park Ass'n v. Norton*,

381 F.3d 759, 763 (8th Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)).  "If an agency's determination

is supportable on any rational basis, [the court] must uphold it."  *Id.*; *Friends of Boundary Waters*

*Wilderness v. Bosworth*, 437 F.3d 815, 822 (8th Cir. 2006).

Here, Dismuke complains that NRCS's wetland determination was erroneous.  However,

NRCS's determination was supported by the presence of hydric soils, wetland vegetation, and

wetland hydrology.  Dismuke has offered no evidence to the contrary.

Dismuke next complains that FSA's loan approval process was delayed, that the technical

assistance he received was insufficient, and that he was improperly asked about settlement funds

he received from a class action lawsuit.  However, Mazzanti explained that the loan application

was processed timely and in accordance with FSA guidelines.  She further explained that any

delay in the processing was the result of the need for obtaining additional information to

---

[5]Failure to exhaust administrative remedies required by 7 U.S.C. § 6912(e) may be excused if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual.  *See Ace Property and Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006).

determine Dismuke's eligibility and to complete his Farm and Home Plan, the difficulty in

obtaining an appraisal on the property, and Dismuke's own changes to his proposed operation

and request to increase the loan amount.  As far as technical assistance given to Dismuke,

Mazzanti informed Dismuke that she needed several items to complete the application and

continued to assist Dismuke in obtaining the necessary information.  Mazzanti also explained

that the sole reason for inquiring about the settlement funds was so that she could assist Dismuke

in listing all assets and liabilities on his financial statement.  Dismuke has not disputed any of the

foregoing facts

Finally, Dismuke complains about an alleged delay in the processing of his two

administrative rights complaints.  However, once Dismuke provided all of the necessary

information, OCR accepted his complaints and proceeded with its investigation.  The

investigation was ongoing when Dismuke filed his cases in federal court.  Dismuke has failed to

offer any evidence to prove that any of the agency's decisions that he challenges were arbitrary,

capricious, an abuse of discretion, or not in accordance with law.  Thus, each of Dismuke's APA

claims must fail as a matter of law.

## CONCLUSION

Based on the foregoing reasons, the Court finds that there are no genuine issues of

material fact and that Defendant is entitled to judgment as a matter of law on all of Dismuke's

claims.  Dismuke's claims are hereby dismissed.

**IT IS SO ORDERED**, this 14th day of December, 2007.

   /s/ Harry F. Barnes  
Hon. Harry F. Barnes
United States District

-15-